IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**ELVIN CLIFFORD WATKINS,**

    **Plaintiff,**

  v.                          **CIVIL ACTION NO. 3:14-cv-09**
                                        **(JUDGE GROH)**

**BOB ROBERTS,**

    **Defendant.**

## REPORT AND RECOMMENDATION THAT
## PLAINTIFF'S COMPLAINT [1] BE DISMISSED

### I. INTRODUCTION

This matter is currently before the Court on Plaintiff's Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 2). On January 21, 2014, Plaintiff filed a *pro se* Complaint against Bob Roberts, Director and Chief of Police for West Virginia University, pursuant to 42 U.S.C. § 1983. (Complaint, ECF No. 1). Plaintiff alleges violations of his civil and constitutional rights for his wrongful eviction from a Potomac State College residence hall because of his 1987 conviction for a sexual offense.[1] (*Id.* at 2-6). On March 6, 2014, Defendant Bob Roberts filed a Motion to Dismiss the Complaint for lack of personal jurisdiction, insufficient process, insufficient service of process and failure to state a claim for which relief may be granted. (Def.'s Mot. to Dismiss, ECF No. 11). Chief Roberts also argues that he is entitled to qualified immunity for any claims asserted against him in his individual capacity. (*Id.* at 10).

---

[1] Plaintiff filed a second Complaint on February 5, 2014 that alleges the same violations against Bob Roberts. Plaintiff then mailed a copy of this complaint, by regular mail, to Chief Roberts on or about February 3, 2014. (Def.'s Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 12 at 3).

1

## II. **STANDARD OF REVIEW**

When filing a lawsuit in federal court, the plaintiff is required to pay certain filing fees. The Court has the authority to allow a case to proceed without the prepayment of fees "by a person who affirms by affidavit that he or she is unable to pay costs." L.R. Gen. P. 3.01; *see also* 28 U.S.C. § 1915(a)(1). The plaintiff files this affidavit along with their request or Motion for Leave to Proceed *In Forma Pauperis*. *See* FED. R. CIV. P. 24. The Supreme Court has explained that the purpose of the "federal *in forma pauperis* statute…is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S. Ct. 1827, 1831 (1989).

When a plaintiff seeks to proceed *in forma pauperis*, the court conducts a preliminary review of the lawsuit before allowing the case to proceed. *See* 28 U.S.C. § 1915(e). The court must dismiss a case at any time if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). A case is often dismissed *sua sponte* (i.e., based on the court's own decision) before the defendant is notified of the case "so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke*, 490 U.S. at 324. When reviewing a case filed by a plaintiff proceeding *pro se*, the Court liberally construes the complaint. *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Under the federal *in forma pauperis* statute, a case may be dismissed if the court finds the complaint to be frivolous. 28 U.S.C. § 1915(e). A complaint is frivolous if it is without arguable merit either in law or fact. *Neitzke,* 490 U.S. at 325. A complaint filed *in forma pauperis* which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. *See id.* at 328.

Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," or where the claims rely on factual allegations which are "clearly baseless." *Id.* at 327; *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The federal *in forma pauperis* statute also allows for a court to *sua sponte* dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(B)(2). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. *Id*. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." *Id.* at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In other words, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Conley*, 355 U.S. at 45-46 (1957).

## III. FACTS

On October 7, 2013, Plaintiff's wife was hired as a residence hall coordinator ("RHC") at Potomac State College in Keyser, West Virginia. (Complaint, ECF No. 1 at 2). Plaintiff moved into an apartment with his wife in a residence hall on campus. (*Id.*). Plaintiff's wife advised the College "on several occasions" that her husband would be residing with her on campus. (*Id.*). For approximately two months, Plaintiff lived with his wife in the residential hall, ate in the campus dining hall and interacted with students without issue. (*Id.*).

On December 2, 2013, Plaintiff was called to the office of Leonard A. Colelli, the campus Provost, and was handed a "Trespass Warning Notice Form" from the West Virginia University Police Department. (Complaint, ECF No. 1 at 3). The Form was served by Officer Hudson and Plaintiff acknowledged receipt of the notice. (Complaint Ex. 3, ECF No. 1-3). The Trespass Warning Notice Form states that Plaintiff "demonstrated a risk or threat of physical harm or injury to others or property" due to his first degree rape conviction from March 3, 1987.[2] (*Id.*). The Trespass Warning Notice states that the notice would go into effect twenty-four hours after service and that Plaintiff was to have no contact with students during this time. (*Id.*). The Trespass Warning Notice further states that the notice is permanently in effect and that Plaintiff may appeal the notice following the College's appeals process. (*Id.*). Plaintiff does not indicate he appealed the Trespass Warning Notice. Plaintiff's wife remains employed with the College and lives in the apartment on campus. (Complaint, ECF No. 1 at 4).

## IV. DISCUSSION

### A. *Plaintiff's Complaint*

---

[2] Plaintiff served nine and a half years at a state correctional institution in Ohio after being convicted of first degree rape in 1987. (Complaint, ECF No. 1 at 2). On August 13, 2007, he was charged with possession of marijuana and served four years in a federal correctional facility. (*Id.*). Plaintiff was released from prison on August 1, 2011 after being granted an early release for good behavior. (*Id.*).

Plaintiff brings the claim pursuant to 42 U.S.C. § 1983 and argues that his "wrongful eviction" due to his prior conviction violated his due process rights under the Fifth Amendment, the West Virginia Constitution and West Virginia eviction laws. (*Id.* at 3). Plaintiff does not cite to a specific state statute regarding West Virginia eviction laws but alleges generally that he was entitled to one month's notice before being evicted. (*Id.*). Absent a court order or legal ground allowing for eviction, Plaintiff asserts that the tenant is entitled to "'due process' to wait to the end of the lease or rental agreement term before asking him to leave." (*Id.* at 3-4). He further appears to allege that Defendant did not have the authority to evict Plaintiff because Defendant "is an employee of the facilities" and "does not own" the residence hall at the College. (*Id.* at 4).

In liberally construing the Complaint, Plaintiff also appears to allege a violation of the equal protection clause of the Fourteenth Amendment by claiming that "petitioner was not treated equally evicted petitioner based up on an old conviction of 26-years." (*Id.*). Plaintiff alleges that the College does not have a policy in place stating that a background check is required to live with a spouse on campus. (*Id.*). Plaintiff further argues that current students are not subjected to background checks and students with criminal convictions are allowed on campus and to enroll in classes. (*Id.* at 4-5).

Plaintiff also alleges an Eighth Amendment violation based on cruel and unusual punishment because he was separated from his wife and both he and his wife suffered humiliation. (*Id.* at 5).

Plaintiff names only Bob Roberts, the Director and Chief of Police for West Virginia University, as the defendant in this case. (*Id.* at 1). Plaintiff alleges that "Chief Bob Roberts is over the officers and jurisdiction at Potomac State College." (*Id.*). Plaintiff states that "Defendant felt [Plaintiff] was a threat of physical harm, in fact, finally, the defendant felt he could cause

5

injuries to others or property." (*Id.* at 3). Plaintiff claims that "defendant clearly visited and used the registry for that purpose where he has to register as a sex offender, and saw the first degree Rape, panic, and labeled him as a violent predator offender and moved to wrongfully evicted [Plaintiff] without a Court Order he can be sued for damages." (*Id.*). Plaintiff seeks monetary relief and punitive damages in the amount of $72,000. (*Id.* at 6).

### B. Legal Analysis

As stated above, the federal *in forma pauperis* statute allows for a court to *sua sponte* dismiss a complaint that "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(B)(2). Plaintiff brought his claims pursuant to 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

42 U.S.C. § 1983. The initial inquiry in § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Hale v. Tallapoosa County*, 50 F.3d 1579 (11th Cir. 1995); *Harvey v. Harvey*, 949 F. 2d 1127, 1130 (11th Cir. 1992).

Under § 1983, a state actor or person acting under the color of state law may be sued for the deprivation of a person's constitutional rights. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" *Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1994) (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)); *see also Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the

6

defendant a state actor"). Thus, no state law has to be in place that is the source of the constitutional violation. Rather, any person acting with a badge of authority given to them by virtue of his or her position with the state who violates a person's constitutional rights is subject to liability for the unconstitutional act. *See West v. Atkins*, 487 U.S. at 49 (citing *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 1043 (1941)); *see also Monroe v. Pape*, 365 U.S. 167, 187, 81 S. Ct. 473, 484, 5 L.Ed.2d 492 (1961)).

In order for a state actor to be held liable for a constitutional violation, the person must be sufficiently involved in the deprivation of rights. As such, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 1948, (2009) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978)); *see also Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge*, 550 F.2d at 928. Therefore, when filing a Complaint, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. *See Fisher v. Washington Metropolitan Area Transit Authority*, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established:

---

[3] *Respondeat superior* is a legal theory by which liability is imposed "on an employer for the torts of an employee when the sole nexus between the employer and the tort is the fact of the employer-employee relationship." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 693, 98 S. Ct. 2018, 2037 (1978).

7

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994).

Here, Plaintiff asserts his § 1983 claim against just one defendant, Chief Bob Roberts. Plaintiff does not allege that subordinate employees of the College acted pursuant to a discriminatory policy; in fact, Plaintiff specifically states that there was no policy in place regarding people with criminal convictions living on campus. (Complaint, ECF No. 1 at 4). Plaintiff fails to allege any facts that demonstrate personal involvement or knowledge of Defendant Roberts in the decision to serve the Trespass Warning Notice. While Plaintiff refers to actions by "defendant" throughout the Complaint, the facts alleged indicate that the Trespass Warning Notice was served by Officer Hudson and discussed in the office of Leonard A. Colelli, the College Provost. (Complaint, ECF No. 1 at 3; Complaint Ex. 3, ECF No. 1-3). Even if these employees acted with discriminatory animus towards Plaintiff, Plaintiff does not make any allegations which reveal the presence of the required elements for supervisory liability by Defendant Roberts. Accordingly, Plaintiff fails to state a claim against Defendant Roberts and he should be dismissed as a Defendant in this action.

## V. **RECOMMENDATION**

After a careful review of the Complaint and attached exhibits, the Court finds that Plaintiff failed to state a claim for which relief may be granted pursuant to 28 U.S.C. § 1915(e)(B)(2). For the reasons set forth above, the undersigned respectfully recommends Plaintiff's Complaint [**ECF No. 1**] be **DISMISSED WITH PREJUDICE,** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* [**ECF No. 2**] be **DENIED** as moot, Plaintiff's Pro Se

8

Motion to Amend Jurisdiction **[ECF No. 7]** be **DENIED** as moot, Defendant's Motion to Dismiss for Lack of Jurisdiction **[ECF No. 11]** be **DENIED** as moot, Plaintiff's Motion for Entry of Default **[ECF No. 13]** be **DENIED** as moot, Plaintiff's Motion for Extension of Time to File Response/Reply **[ECF No. 14]** be **DENIED** as moot, and Plaintiff's Motion for Permission to Amend Pursuant to Rule 15 **[ECF No. 15]** be **DENIED** as moot.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, Plaintiff may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation to the *pro se* Plaintiff, and to any counsel of record, if applicable.

**DATED**: March 17, 2014

*/s/ James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE